# In the United States Court of Federal Claims

No. 17-1756C

(Filed: February 9, 2021)

| | |
|---|---|
| **RODRIGO BRENES,** | ) |
| ***Plaintiff,*** | ) |
| **v.** | ) |
| **THE UNITED STATES,** | ) |
| ***Defendant.*** | ) |

*Rodrigo Brenes*, pro se.

*Ashley Akers*, United States Department of Justice, Civil Division, Washington, D.C., for Defendant. With her on the briefs were *Joseph H. Hunt*, Assistant Attorney General, Civil Division, *Robert E. Kirschman, Jr.*, Director, and *Lisa L. Donahue*, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C.

**OPINION AND ORDER**

***SOLOMSON*, Judge.**

In this civilian pay case, Plaintiff, Rodrigo Brenes, an employee of the United States Department of Agriculture ("USDA"), acting *pro se*, filed his original complaint against Defendant, the United States, on November 7, 2017.[1] ECF No. 1 ("Compl.") at 1. Mr. Brenes alleges that USDA unlawfully reduced his salary and thus seeks back pay in the amount of $120,000.[2] *Id.* This sum represents his reduction in salary and corresponding benefits over the course of his five-year government assignment as USDA Special Projects Officer in Haiti. *Id.* at 4–5. On March 9, 2018, the government

[1] This case originally was assigned to Judge Williams, ECF No. 2, but on February 5, 2020, was transferred to the undersigned Judge. ECF No. 31.

[2] In Mr. Brenes' amended complaints, he lists his demand as $145,695, as to include certain unspecified "statutory damages." ECF Nos. 19 at 23, 26 at 1; *see* ECF No. 33-1 at 3.

moved to dismiss the complaint pursuant to Rule 12(b)(6) of the Court of Federal Claims ("RCFC") for failure to state a claim. ECF No. 7. The parties filed their respective response briefs. ECF Nos. 9, 10.

On September 12, 2018, the Court issued an order, requesting Mr. Brenes' consent for the Court to refer this case to the Court of Federal Claims Bar Association Pro Bono/Attorney Referral Pilot Program (the "Pro Bono Program") for the potential representation by counsel. ECF No. 11. On October 3, 2018, Mr. Brenes filed a notice with the Court, indicating his consent for the referral of this case to the Pro Bono Program, *see* ECF No. 12, and, subsequently, on October 23, 2018, the Court issued an order, directing the Clerk of the Court to refer this case to the Pro Bono Program. ECF No. 13. The Court further stayed this case for sixty days pending the identification of potential counsel. *Id.*

On December 20, 2018, Mr. Brenes notified the Court, via motion, that he had obtained Martin J. Martinez as counsel. ECF No. 14. On February 28, 2019, Mr. Brenes filed his first amended complaint ("FAC") with the Court's leave. ECF No. 19 (FAC). On April 4, 2019, the government filed a motion for more definitive statement pursuant to RCFC 12(e), which, on August 22, 2019, the Court granted. ECF Nos. 22, 25. On October 3, 2019, Mr. Brenes filed his second amended complaint ("SAC"). ECF No. 26 (SAC). The government filed its answer on October 17, 2019. ECF No. 27. On May 11, 2020, the government filed its motion to dismiss for lack of jurisdiction pursuant to RCFC 12(b)(1). ECF No. 33 ("Def. Mot."). On May 14, 2020 and June 22, 2020, the parties, respectively, filed their response briefs. ECF Nos. 34 ("Pl. Resp."), 36 ("Def. Reply"). On June 22, 2020, Mr. Martinez represented to the Court that he needed to withdraw from the case due to health issues. ECF No. 37. On July 8, 2020, the Court granted Mr. Martinez's motion to withdraw from this matter and again stayed the case for sixty days pending Mr. Brenes' identification of alternative counsel. ECF No 41. Mr. Brenes was unable to obtain counsel and thus proceeds *pro se* as the Court resumes consideration of the government's motion to dismiss for lack of subject-matter jurisdiction.

While this Court generally holds a *pro se* plaintiff's pleadings to "less stringent standards," *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (per curiam), this Court "may not similarly take a liberal view of [a] jurisdictional requirement and set a different rule for *pro se* litigants only." *Kelley v. Sec'y of Dep't of Labor*, 812 F.2d 1378, 1380 (Fed. Cir. 1987). In short, "even pro se plaintiffs must persuade the court that jurisdictional requirements have been met." *Hale v. United States*, 143 Fed. Cl. 180, 184 (2019). In the absence of subject-matter jurisdiction, the Court must dismiss the claim. *Kissi v. United States*, 493 F. App'x 57, 58 (2012); *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002); RCFC 12(h)(3) (*sua sponte* dismissal).

The Court begins with the facts alleged in Mr. Brenes' various complaints filed in this Court.[3] From April 9, 2009 until November 9, 2011, Mr. Brenes was employed by USDA as an agricultural advisor in Iraq. FAC ¶¶ 12, 31. On November 9, 2011, USDA offered Mr. Brenes a General Schedule ("GS") position as a Special Projects Officer in Port-au-Prince, Haiti for a time-limited assignment not to exceed five years. SAC ¶¶ 5–8, 12. This position was created through an interagency agreement between USDA and the United States Agency for International Development ("USAID") in order "to revitalize and modernize the Haitian agriculture sector." Compl. ¶ 7; FAC ¶¶ 21–24, 48. On November 28, 2011, Mr. Brenes received official confirmation of his employment as a Schedule B, GS-340-14, Step 3 and that, accordingly, his yearly salary would be $112,224. SAC ¶ 12. On December 11, 2011, USDA's Human Resources Division informed Mr. Brenes that his adjusted salary would be $105,268, including $14,925 for locality pay.[4] *Id.* ¶ 13. On January 3, 2012, Mr. Brenes departed for Haiti and made relocation plans for his wife and son to join him there. FAC ¶ 40. Six weeks after he arrived, however, USDA's Human Resources Division notified Mr. Brenes that it erroneously had included locality pay in calculating his salary and that his actual salary would be only $90,343. Compl. ¶¶ 22–24; SAC ¶¶ 13, 15. The revised salary also impacted his benefits, including retirement, life insurance, and premium pay. Compl. ¶ 29.

Mr. Brenes, even in his SAC, does not clearly articulate the legal basis for his cause of action. Based upon a government interrogatory to which Mr. Brenes responded, Def. Mot. at 3, the government argues that Mr. Brenes' claims, correctly characterized, are for breach of contract, promissory estoppel, and coercion. *Id.* at 1, 4–6. In his response to the government's motion, Mr. Brenes recasts his factual allegations as claims based upon breach of an implied-in-fact contract, the Back Pay Act, and the government's failure to fulfill the duty of good faith and fair dealing. Pl. Resp. at 5–7.

---

[3] For the purpose of resolving the pending motion to dismiss, the facts alleged in Plaintiff's operative amended complaint are assumed to be true, and do not constitute factual findings by the Court. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Am. Bankers Ass'n v. United States*, 932 F.3d 1375, 1380 (Fed. Cir. 2019). The Court may consider "documents incorporated into the complaint be reference," such as Mr. Brenes' employment offer letter which the government appended to its motion, without converting a motion to dismiss to one for summary judgment. *See Bristol Bay Area Health Corp. v. United States*, 110 Fed. Cl. 251, 261–62 (2013). While the SAC is the operative complaint pending before the Court, we reference the facts contained in all three complaints merely to provide additional context.

[4] Locality pay is defined as "pay in addition to base salary intended to equalize federal employees' compensation with that of non-federal workers in the same geographic area." *Lubow v. U.S. Dep't of State*, 783 F.3d 877, 879 (D.C. Cir. 2015).

Generally, "[t]he jurisdiction of the Court of Federal Claims is defined by the Tucker Act, which gives the court authority to render judgment on certain monetary claims against the United States." *RadioShack Corp. v. United States*, 566 F.3d 1358, 1360 (Fed. Cir. 2009). The Tucker Act, 28 U.S.C. § 1491(a)(1), provides this Court with jurisdiction to decide "actions pursuant to contracts with the United States, actions to recover illegal exactions of money by the United States, and actions brought pursuant to money-mandating statutes, regulations, executive orders, or constitutional provisions." *Roth v. United States*, 378 F.3d 1371, 1384 (Fed. Cir. 2004). The Tucker Act, however, "does not create a substantive cause of action." *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc). Moreover, "[n]ot every claim invoking the Constitution, a federal statute, or a regulation is cognizable under the Tucker Act." *United States v. Mitchell*, 463 U.S. 206, 216 (1983). With respect to "money-mandating" claims, the plaintiff must identify a law that "'can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained.'" *Id.* at 217 (quoting *United States v. Testan*, 424 U.S. 392, 400 (1976)). For the reasons explained below, the substance of Mr. Brenes' claims, no matter how they are viewed, are not within this Court's subject matter jurisdiction.

*First*, "there is a 'well-established principle that, absent specific legislation, federal employees derive the benefits and emoluments of their position from appointment rather than from any contractual or quasi-contractual relationship with the government.'" *Hamlet v. United States*, 63 F.3d 1097, 1101 (Fed. Cir. 1995) (quoting *Chu v. United States*, 773 F.2d 1226, 1229 (Fed. Cir. 1985)); *see Berry v. United States*, 27 Fed. Cl. 96, 100 (1992) ("[T]he rights of civilian and military public employees against the Government do not turn on contract doctrines, but are matters of legal status."). Although the "distinction between appointment and contract may sound dissonant in a regime accustomed to the principle that the employment relationship has its ultimate basis in contract, the distinction nevertheless prevails in government service." *Adams v. United States*, 391 F.3d 1212, 1221 (Fed. Cir. 2004) (quoting *Kizas v. Webster*, 707 F.2d 524, 535 (D.C. Cir. 1983)). Moreover, a federal employee's "relationship with the Government cannot be simultaneously governed by both an appointment and a contract." *Collier v. United States*, 56 Fed. Cl. 354, 356 (2003), *aff'd*, 379 F.3d 1330 (Fed. Cir. 2004). In determining the type of federal employment at issue, "the court looks to the relevant statutory language and implementing regulations, as well as to the hiring documents." *Wade v. United States*, 136 Fed. Cl. 232, 244 (2018).

Here, the relevant hiring documents demonstrate that Mr. Brenes' employment was by appointment (and not contract). The November 28, 2011 employment confirmation letter from the USDA, which Mr. Brenes indicated that he received, expressly used the word "appointment" no less than five times:

- The type of appointment will be a Schedule B Excepted Service[;]
- Appointment/Appointment Not-to-Exceed **12/03/2016**[;]
- The effective date of your appointment is **12/04/2011**[;]
- This appointment requires that you obtain and maintain a "Secret" security clearance . . . [;]
- This appointment is subject to confirmation that you are eligible to work in the United States . . . .

ECF No. 33-1 at 1 (emphasis in original). Mr. Brenes does not direct the Court to any statute, regulation, or hiring documents that even suggest his employment was pursuant to contract. Indeed, Mr. Brenes does not allege the existence of an express contract.

Mr. Brenes' claim of breach of an implied-in-fact contract, Pl. Resp. at 5–6, must be rejected for the same reasons. "Although this Court generally possesses subject matter jurisdiction over contracts implied-in-fact, such is not the case for claims asserted by federal employees who are employed pursuant to appointment, rather than by virtue of an employment contract." *Boston v. United States*, 43 Fed. Cl. 220, 225 (1999); *see Adams*, 391 F.3d at 1221 ("Appellants served by appointment. . . . They had not, and could not have, entered into any separate agreement with the Government express or implied . . . ."). Because Mr. Brenes' employment was by appointment – and not pursuant to an express or implied-in-fact contract – his claim that the government breached its duty of good faith and fair dealing similarly must fail as well. Simply put, "'because the existence of th[e] covenant [of good faith and fair dealing] depends on the existence of an underlying contractual relationship, there is no claim for a breach of this covenant where a valid contract has not yet been formed.'" *Scott Timber Co. v. United States*, 692 F.3d 1365, 1372 (Fed. Cir. 2012) (alteration in original) (quoting *Mountain Highlands, LLC v. Hendricks*, 616 F.3d 1167, 1171 (10th Cir. 2010)).

*Second*, while the Back Pay Act, codified at 5 U.S.C. § 5596(b)(1), "was intended to provide a monetary remedy for . . . unwarranted or unjustified actions affecting pay or allowances (that) could occur in the course of reassignments and change from full-time to part-time work," *Testan*, 424 U.S. at 405 (internal quotation marks omitted), it "is not itself a jurisdictional statute." *Mitchell v. United States*, 930 F.2d 893, 896 n.3 (Fed. Cir. 1991). In turn, "[u]nless some other provision of law commands payment of money to the employee for the 'unjustified or unwarranted personnel action,' the Back Pay Act is inapplicable." *Spagnola v. Stockman*, 732 F.2d 908, 912 (Fed. Cir. 1984) (quoting *United States v. Connolly*, 716 F.2d 882, 887 (Fed. Cir. 1983)).

In Mr. Brenes' SAC, and in response to the government's motion to dismiss, Mr. Brenes does not allege any additional provision of law that could construed as money mandating. *See* SAC at 5; Pl. Resp. at 4–5. As a general matter, "an amended pleading supersedes the original for all purposes." *Nolen v. Lufkin Indus., Inc.*, 469 F. App'x 857, 860 (Fed. Cir. 2012). Even assuming, given Mr. Brenes' *pro se* status, that the SAC did not replace the earlier filed complaints, and that the Court may look to Mr. Brenes' earlier filings to locate a basis for his claims, none of the cited sources are helpful. In his original complaint, Mr. Brenes contends that his action for locality pay arises under the Federal Employees Pay Comparability Act of 1990 ("FEPCA"), codified at 5 U.S.C. § 5304. Compl. ¶ 2. FEPCA is a money-mandating statute, as, like other federal pay statutes, it uses the phrase "shall be payable." 5 U.S.C. § 5304(a)(1); *see Agwiak v. United States*, 347 F.3d 1375, 1380 (Fed. Cir. 2003) ("We have repeatedly recognized that the use of the word "shall" generally makes a statue money-mandating."). FEPCA, however, explicitly only applies to "General Schedule position[s] in the United States . . . and its territories and possessions." 5 U.S.C. § 5304(f)(1)(A); *see* 5 C.F.R. § 531.603. Haiti is not part of the United States; nor is it a territory or possession of the United States.

Alternatively, Mr. Brenes asserts that he is eligible for locality pay based on the Supplemental Appropriations Act of 2009, Pub. L. No. 111-32, § 1113(a), 123 Stat. 1859, and the implementing USAID regulations,[5] which provide locality pay for members of the foreign service stationed overseas. Compl. ¶ 2. But therein lies the problem – Mr. Brenes does not allege that the government designated him as a member of the foreign service as part of USDA's interagency agreement with USAID.[6] Because Mr. Brenes fails to identify any other applicable statute or regulation that mandates payment of money for USDA's alleged unlawful actions, "the Back Pay Act itself cannot fill that gap." *Spagnola*, 732 F.2d at 912; *see Refaei v. United States*, 129 Fed. Cl. 1, 23 (2016) (dismissing Back Pay Act claim on similar grounds).

*Third*, to the extent that Mr. Brenes alleges that he detrimentally relied on the USDA's salary representations when he moved his family to Haiti, Def. Mot. at 5–6, this cause of action also suffers from a jurisdictional defect. Any claim for "promissory estoppel – which seeks a judicially enforced performance of a promise – is no different than an implied-in-law contract," *Carter v. United States*, 98 Fed. Cl. 632, 638 (2011), and

---

[5] *See* https://www.usaid.gov/sites/default/files/documents/1877/470.pdf (last visited Feb. 7, 2021).

[6] On the contrary, Mr. Brenes provided an internal agency email from the USDA program assistant which makes clear that Mr. Brenes was not a foreign service member. *See* ECF Nos. 9 at 4, 9-3.

"does not fall within the jurisdiction granted to the court by the Tucker Act." *Twp. of Saddle Brook v. United States*, 104 Fed. Cl. 101, 111 (2012). "It is well settled that although the court's jurisdiction extends to implied contracts as well as express contracts, it can adjudicate only contracts implied in fact and not contracts implied in law." *XP Vehicles, Inc. v. United States*, 121 Fed. Cl. 770, 782-83 (2015) (internal quotation marks and alteration omitted).

More significantly, Mr. Brenes' promissory estoppel allegation is defective as a matter of constitutional law. The Appropriations Clause of the United States Constitution provides that "[n]o Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law." Art. 1, § 9, cl. 7. In *Office of Personnel Management v. Richmond*, the United States Supreme Court held that the Appropriations clause prohibits the "judicial use of the equitable doctrine of estoppel" from granting a benefits claimant "a money remedy that Congress has not authorized." 496 U.S. 414, 426 (1990). In *Richmond*, the recipient of a federal disability annuity sought advice about increasing his work hours while retaining the annuity. *Id.* at 416-18. Federal employees twice gave him erroneous information based on a prior version of the relevant statute. *Id.* In reliance on that information, the benefits claimant increased his hours beyond the limits set by the then-current statute and lost six months' worth of benefits; he appealed the denial of the lost benefits under a theory that the government was estopped from enforcing the statutory earnings limit. *Id.* at 417–18. In rejecting that entitlement theory, the Supreme Court explained that, because Congress had only authorized the payment of disability benefits under particular circumstances, the executive branch employee lacked the power to waive those requirements or to otherwise bind the government to pay more than Congress permitted. *Id.* at 424–28 ("Extended to its logical conclusion, operation of estoppel against the Government in the context of payment of money from the Treasury could in fact render the Appropriations Clause a nullity.").

As applied by our appellate court, the United States Court of Appeals for the Federal Circuit, *Richmond* stands for the proposition that a plaintiff's equitable claim against the government – for an "entitlement contrary to statutory eligibility criteria" – must fail.[7] *Burnside-Ott Aviation Training Ctr., Inc. v. United States*, 985 F.2d 1574, 1581

---

[7] While the Supreme Court acknowledged that "some type of 'affirmative misconduct' might give rise to estoppel against the Government," *Richmond*, 496 U.S. at 421–22 (quoting *INS v. Hibi*, 414 U.S. 5, 8 (1973) (per curiam)); *see Zacharin v. United States*, 213 F.3d 1366, 1371 (Fed. Cir. 2000) ("affirmative misconduct is a prerequisite for invoking equitable estoppel against the government"), "that phrase has usually been taken to mean something more than careless misstatements." *Nagle v. Acton-Boxborough Reg'l Sch. Dist.*, 576 F.3d 1, 5 (1st Cir. 2009); *see, e.g.*, *Bartlett v. U.S. Dep't of Agric.*, 716 F.3d 464, 476 (8th Cir. 2013) ("[T]hese allegedly misleading actions were at most the product of negligence, which is insufficient to establish affirmative

(Fed. Cir. 1993); *see also Montelongo v. Office of Pers. Mgmt.*, 939 F.3d 1351, 1355 (Fed. Cir. 2019) ("neither OPM's handbook nor a government employee's advice overrides the clear language of the statute"); *Ortegon v. Wilkie*, 757 F. App'x 934, 936 (Fed. Cir. 2018) (citing *Richmond*, 496 U.S. at 426, for the proposition that "no equitable considerations can create a right to payments out of the U.S. Department of the Treasury that have not been provided by Congress").

Accordingly, neither this Court nor the Executive Branch generally may award locality pay benefits outside of the circumstances Congress specified in either FEPCA or the Supplemental Appropriations Act of 2009. In light of this conclusion, the Court would be usurping constitutional authority if it were to award Mr. Brenes damages based upon his claim for locality pay on a theory of promissory estoppel. *See Flick v. Liberty Mut. Fire Ins. Co.*, 205 F.3d 386, 391 (9th Cir. 2000) ("It is an axiomatic principle of constitutional law that the judiciary's power is limited by a valid reservation of congressional control over public funds.").

*Finally*, to the extent Mr. Brenes suggests that the government fraudulently induced Mr. Brenes to accept the employment offer, such a claim sounds in tort "over which this Court has no Tucker Act jurisdiction." *Outlaw v. United States*, 116 Fed. Cl. 656, 662 (2014) (citing *Phu Mang Phang v. United States*, 388 F. App'x 961, 963 (Fed. Cir. 2010)); *see Bonewell v. United States*, 111 Fed. Cl. 129, 148 (2013) ("inducement is a claim sounding in tort that is beyond the court's Tucker Act jurisdiction").

* * * * *

Assuming the truth of the factual allegations underpinning Mr. Brenes' claim, the Court is deeply sympathetic to Mr. Brenes' situation. Indeed, every indication appears to be that he was not paid in accordance with the agency's offer letter, but rather received a lower salary only after accepting the offer and moving to Haiti. Nevertheless, Mr. Brenes' employment was clearly via appointment and thus he does not have an employment *contract* upon which to base any claim against the government. Nor does the Court have jurisdiction to consider any of his other theories of recovery. In sum, although unfortunate, Mr. Brenes' "claims against the government are moral, not legal." *Calvin v. United States*, 63 Fed. Cl. 468, 475 (2005).

---

misconduct."). And, even then, the Court is unaware of a case in which a plaintiff successfully has relied upon an estoppel theory to recover money. In any event, Mr. Brenes does not allege that USDA's error in including locality pay in his proposed appointment offer was something more than carelessness or mere negligence.

## *CONCLUSION*

Accordingly, the government's motion to dismiss pursuant to RCFC 12(b)(1) is **GRANTED** and Mr. Brenes' second amended complaint hereby is **DISMISSED**. The Clerk shall enter **JUDGMENT** for the government.

**IT IS SO ORDERED**.

s/Matthew H. Solomson
Matthew H. Solomson
Judge